1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SARAH WILSON-BANKS, | ) | 1:06cv0698 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Sarah Wilson-Banks ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance benefits on December 10, 2003, alleging disability since January 18, 2001, due to a lower back injury and pain in her right arm

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  On September 27, 2006, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1  and leg.  AR 367-369, 380-386.  After being denied both initially and upon reconsideration,

2  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 350-353, 355-

3  359, 360.  On May 11, 2005, ALJ James Berry held a hearing.  AR 486-511.  ALJ Berry denied

4  Plaintiff's claim on May 23, 2005.  AR 301-309.  On April 3, 2006, the Appeals Council denied

5  review.  AR 2940297.

6       Plaintiff filed a prior application in August 2001.  Plaintiff's claim was denied initially,

7  on reconsideration, and by an ALJ in a decision dated June 16, 2003.  AR 72-73, 77, 331-341.

8  After the Appeals Counsel denied review, Plaintiff filed an action in this Court, Case Number

9  1:03cv6603 LJO.  The Court upheld the ALJ's decision on December 21, 2004.  Plaintiff did not

10  appeal this Court's decision.

11      <u>Hearing Testimony</u>

12      ALJ Berry held a hearing on May 11, 2005, in Fresno, California.  Plaintiff appeared with

13  her attorney, Geoffrey Hayden.  Vocational expert ("VE") Thomas Dachelet also appeared and

14  testified.

15      Plaintiff testified that she was 59 years old at the time of the hearing and completed the

16  twelfth grade.  She was 5'8" tall and weighed 230-240 pounds.  Plaintiff could read, write and

17  drive a car.  She last worked in 1999 as an office assistant.  AR 491.  She left after she injured

18  her back on the job.  AR 492.

19      Plaintiff explained that her back swells and that if she rolls on it during the night, she gets

20  paralyzed from the waist down.  AR 493.  She fell while trying to get out of bed in November

21  2004 and had subsequent problems with numbness on her right side, including her hand, arm and

22  shoulder.  She has received physical therapy and electrical stimulation for the numbness in her

23  hands, but still has pain.  She also had physical therapy for her right shoulder, which swells and

24  causes problems when her back hurts.  Plaintiff injured her ankle one morning while trying to

25  avoid falling on her right side while getting out of bed, and it still causes her pain.  Her knees

26  sometimes just give out and she also has problems with her hips.  AR 495.

27      Plaintiff still has pain in her back, and she elected not to have surgery because there was

28  only a fifty percent chance of improvement.  She rated her daily pain as a nine and indicated that

she had been having severe pains for the last few months.  Plaintiff takes medications, and

although they help, the pain does not go away.  AR 496, 503.  She lays down and elevates her

legs during the day.  AR 496.

Plaintiff thought she could lift and carry under 10 pounds without pain and could walk for

less than one-half block before needing to rest.  AR 497.  She could stand for 15-20 minutes

before needing to sit, and could sit for about 20-30 minutes before needing to stand.  AR 497.

She has problems bending from the waist and cannot kneel, stoop or squat without pain.  AR

498.  Her most comfortable position is laying down all day.  AR 507.

Plaintiff mostly stays home during the day, but sometimes goes to her sister's house next

door or to Walmart, just to get out.  If she has things to do during the day, she gets up early and

takes pain medicine so that she can get things done.  AR 498.  She lives by herself, but her

daughter sometimes come over and help with housework.  Plaintiff does the grocery shopping

but has trouble when she has to pick things up.  AR 498.  She can dress herself, but takes her

time.  AR 499.  She sometimes has problems putting her hands above her head.  AR 501.

Plaintiff has trouble grasping things with her right hand and sometimes drops things, so

she usually tries to pick up things with her left hand.  Her right hand gets completely numb about

four times a month, and it lasts for about an hour or so.  AR 499.

As for social activities, Plaintiff goes to her sister's house and her mom's house.  They go

to church and sometimes out to eat.  She takes medicine prior to going to church and just goes for

the time that she knows she can sit.  AR 500.  She tries to walk to keep her strength up.  AR 501.

When questioned by the ALJ, Plaintiff indicated that she watched her granddaughter for

about a year in 2002.  AR 502-503.  As to her abilities, Plaintiff thought that she could stand for

an hour and one-half total, and walk for about 20-30 minutes total.  AR 504.  She could sit for

less than one hour total and lift and carry about 10-11 pounds.  AR 507.

For the first hypothetical, the ALJ asked VE Dachelet to assume a person of Plaintiff's

age, education and past work at the medium semi-skilled level.[3]  This person could lift and carry

---

[3]  The VE testified that Plaintiff's past job is categorized as a light position in the Dictionary of
Occupational Titles, but that as Plaintiff actually performed the position, it was considered medium work.

1  20 pounds occasionally and 10 pounds frequently, and stand, walk and sit six hours each.  This

2  person could perform Plaintiff's past relevant work.  AR 508.

3  For the second hypothetical, the VE was asked to assume that this person could lift and

4  carry 10 pounds, stand for one and one-half hours total, walk 20-30 minutes total and sit for less

5  than one hour total.  This person cannot kneel, stoop or squat and cannot reach overhead with the

6  right, dominant extremity.  This person could not perform Plaintiff's past relevant work or any

7  other work.  AR 509.

8  Plaintiff's attorney referred to the consultive examiner's findings in asking the VE the

9  third hypothetical.  This person could lift and carry 20 pounds occasionally and 10 pounds

10  frequently.  She could stand and walk for six hours out of an eight hour day with normal breaks,

11  and could sit without restriction as long as she had breaks every 30 minutes.  She could not

12  perform excessive climbing, stooping, kneeling, balancing, crouching and crawling.  The VE

13  testified that this person could not perform Plaintiff's past work because it was at the medium

14  level.  AR 509.

15  <u>Medical Record</u>

16  A November 1998 MRI showed a small diffuse central disc herniation with mild bilateral

17  neural foraminal narrowing, a very small diffuse disc bulge at L4-5 with minimal bilateral neural

18  foraminal narrowing, and a small central disc bulge at L5-S1 without spinal stenosis or neural

19  foraminal narrowing.  AR 472.

20  Plaintiff underwent another MRI in June 1999.  There was interval worsening of a

21  previously noted disc protrusion at L3-4 compared with the 1998 MRI.  There was also mild

22  compression of the right anterior margin of the thecal sac, but no significant neural foraminal

23  narrowing.  AR 473.

24  On June 25, 1999, Plaintiff saw Robert L. Simons, M.D.  Plaintiff reported that she was

25  still working four hours a day, but called in sick some days.  She walked slowly and performed

26  lower limb strength testing slowly and with great apparent effort.  There was no striking sensory

27  loss in her lower extremities.  Plaintiff was offered lumbar injections, but declined.  Dr. Simons

28

1  opined that her condition was permanent and stationary and that she may need some permanent

2  job modifications.  AR 474-475.

3         Don T. Williams, M.D., performed a consultive examination in February 2000.  Plaintiff

4  reported that she was injured at work on October 12, 1998, but that her lower back pain started

5  the last week of September 1998.  Dr. Williams diagnosed significant lumbar degenerative disc

6  disease and stenosis at L3-4 and L5-S1, cervical strain versus cervical disc disease and right

7  shoulder subacromial impingement.  He considered her condition permanent and stationary, and

8  indicated that she could not perform over-shoulder-level or overhead activities, or prolonged

9  reaching activities such as typing.  Her back impairment limited her to light work.  AR 464-472.

10         On May 8, 2000, Charles J. Heller, M.D., performed a disability retirement evaluation.

11  Plaintiff denied any previous symptoms or trauma to her back or right upper extremity prior to

12  October 12, 1998.  Plaintiff walked slowly and deliberately and there was noted marked guarding

13  of motions of the lower back.  She was barely able to heel and toe walk and she refused to squat.

14  After reviewing her records and completing his examination, he diagnosed Plaintiff with right

15  shoulder impingement syndrome and degenerative disc disease with 3-4 mm disc protrusion at

16  L3-4.  Dr. Heller opined that Plaintiff was permanently disabled from the performance of her

17  office assistant job as the result of a work-related injury.  AR 477-483.

18         On January 2, 2003, Plaintiff was examined by podiatrist Frederick J. Kruger after

19  complaining of pain in the back of her left foot and ankle pain for the past few months.  On

20  examination, Dr. Kruger determined that Plaintiff had severe Achilles tendinitis of the left foot.

21  He prescribed an anti-inflammatory and referred her to physical therapy.  AR 414.

22         On January 20, 2003, Plaintiff complained of a swollen right leg that she suffered while

23  protecting her left leg.  AR 423.  X-rays of her right knee taken in February were normal.  AR

24  424.

25         In June 2003, Plaintiff underwent a successful laparoscopic cholecystectomy after

26  complaining of abdominal pain for the past two months.  AR 413,415-417, 418-419.

27         Plaintiff was evaluated by consultive examiner Jill Ostrem, M.D., on February 16, 2004.

28  She complained mainly of low back pain and a recent ankle injury.  Plaintiff reported that she

began feeling back pain in 1998, declined surgery in 2002 because of the 50/50 chance of improvement, and fell out of bed in December 2003. Plaintiff was in no acute distress and walked without a limp.  She could stand on her toes and heels well without difficulty.  There was tenderness along the paraspinal muscles of the lumbar spine, and straight leg raising was not performed because of Plaintiff's severe obesity.  Range of motion in her upper and lower extremities was within normal limits and there was no evidence of joint pain, swelling, tenderness or inflammation.  Grip strength was 5/5 bilaterally, and motor strength and sensation were normal.  AR 425-428.

_____Dr. Ostrem diagnosed chronic low back pain likely secondary to degenerative disc disease.  She opined that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds frequently, could stand and walk for six hours in an eight hour day, and could sit without restriction as long as she has breaks every 30 minutes to get up and stretch.  She could not perform excessive climbing, stooping, kneeling, balancing, crouching and crawling.  AR 428-429.

_____State Agency physician Durell D. Sharbaugh, M.D., completed a Physical Residual Functional Capacity Assessment form on March 24, 2004.  Dr. Sharbaugh opined that Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently, could stand and/or walk for about six hours in an eight hour day, and could sit for about six hours in an eight hour day. Plaintiff had no limitations in pushing and/or pulling or in postural or manipulative activities. AR 430-437.  Dr. Sharbaugh indicated that there was no evidence of a material change in functional capacity from Plaintiff's prior application and adopted the findings of the prior ALJ, i.e., that Plaintiff could perform a full range of light work.  AR 440.   This opinion was affirmed on June 4, 2004.  AR 437.

_____On September 27, 2004, a letter in Plaintiff's file signed by "Deborah Favila" indicated that Plaintiff was permanently disabled from a work-related back injury.  AR 442.

On October 29, 2004, Plaintiff complained of back pain and pain and numbness in her right hand.  Plaintiff indicated that her low back had recently worsened and that her right hand

1  and arm were tingling.  She had decreased strength in her right upper extremity and decreased

2  range of motion at the waist.  She was given medication. AR 450.

3      In November 2004, Plaintiff reported that she fell out of bed because her back "gave out"

4  and complained of back pain and right arm pain with numbness in her right hand.  She had

5  decreased range of motion and grip strength in her right arm and was prescribed medication and

6  physical therapy.  AR 448-449.

7      By December 2004, a treatment note indicated that electrical stimulation was helping

8  with her right shoulder pain.  AR 443.

9      On February 28, 2005, Plaintiff saw Uma M. Rao, M.D., for complaints of low back pain.

10  Dr. Rao reviewed Plaintiff's records and performed an examination.  She was diagnosed with

11  right upper and lower extremity paresthesis and prescribed electrical stimulation twice a week for

12  two weeks for her lower back.  AR 454.

13      ALJ's Findings

14      The ALJ determined that Plaintiff had the severe impairment of degenerative disc disease

15  of the lumbar spine. He found her obesity and right shoulder paresthesia to be non-severe.  After

16  reviewing the medical evidence and finding that Plaintiff was not entirely credible, the ALJ

17  determined that pursuant to Chavez v. Bowen, Plaintiff had not overcome the presumption of

18  continuing non-disability.  Plaintiff retained the residual functional capacity ("RFC") to lift and

19  carry 20 pounds occasionally and 10 pounds frequently, and to sit, stand or walk six hours each

20  in an eight hour day.  Based on this RFC, the ALJ concluded that Plaintiff could perform her past

21  relevant work as an office assistant as it is generally performed in the national economy.  AR

22  308-309.

23                        **SCOPE OF REVIEW**

24      Congress has provided a limited scope of judicial review of the Commissioner's decision

25  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

26  the Court must determine whether the decision of the Commissioner is supported by substantial

27  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

28  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v.

1   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

2   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

3   401.  The record as a whole must be considered, weighing both the evidence that supports and

4   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

5   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

6   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

7   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

8   Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

9   substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

10   Cir. 1987).

11   ## **REVIEW**

12        In order to qualify for benefits, a claimant must establish that he is unable to engage in

13   substantial gainful activity due to a medically determinable physical or mental impairment which

14   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

15   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

16   such severity that he is not only unable to do her previous work, but cannot, considering his age,

17   education, and work experience, engage in any other kind of substantial gainful work which

18   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

19   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

20   Cir. 1990).

21        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

22   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

23   C.F.R. §§ 404.1520 (a)-(e), 416.920 (a)-(g) (2005).  Applying this process in this case, the ALJ

24   found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset of

25   disability; (2) has an impairment or a combination of impairments that is considered "severe"

26   (degenerative disc disease) based on the requirements in the Regulations (20 CFR §§

27   416.920(c)); (3) does not have an impairment or combination of impairments which meets or

28   equals one of the impairments set forth in Appendix 1, Subpart P of Part 404; and (4) can

8

1    perform her past relevant work as it is generally performed in the national economy.  AR 308-

2    309.

3         Plaintiff argues that the ALJ (1) erred in failing to find that her shoulder impingement

4    was a severe impairment; and (2) failed to properly evaluate her obesity pursuant to SSR 02-01p.

5                                        **DISCUSSION**

6    A.    Right Shoulder Impairment

7    _____Plaintiff first argues that the ALJ should have either believed her testimony about her

8    shoulder impairment or further developed the medical record, but should not have speculated that

9    her pain had resolved.  She believes that she provided sufficient evidence that her shoulder

10   impairment was severe, including a fall in 2004 that worsened her injury and her continuing

11   treatment through at least February 2005.

12        At the second step of the sequential evaluation of disability, the ALJ determines whether

13   a claimant has a severe impairment of combination of impairments.  A severe impairment is one

14   that significantly limits the claimant's physical or mental ability to do basic work activities.  20

15   C.F.R. § 1520(c).  An impairment or combination of impairments is found "not severe" and a

16   finding of "not disabled" is made at this step when medical evidence establishes only a slight

17   abnormality or a combination of slight abnormalities which would have no more than a minimal

18   effect on an individual's ability to work. even if the individual's age, education, or work

19   experience were specifically considered (i.e., the person's impairment(s) has no more than a

20   minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

21   SSR 85-28.

22        Here, the ALJ reviewed the medical evidence relating to Plaintiff's shoulder impairment

23   as well as her testimony about her resulting limitations.  AR 306-307.  He concluded that

24   although Plaintiff had a history of right shoulder injury with paresthesia, her treating source

25   reported in December 2004 that treatment was helping and did not set forth any associated

26   functional limitations.  AR 307.

27

28

The evidence in the record supports the ALJ's conclusion.[4]  During a February 2004, consultive examination, Plaintiff did not complain about her shoulder, nor did she do so in 2003. During Dr. Ostrem's examination, range of motion in her upper and lower extremities was within normal limits and there was no evidence of joint pain, swelling, tenderness or inflammation. Grip strength was 5/5 bilaterally, and motor strength and sensation were normal.  AR 425-428.

Plaintiff began complaining of right arm pain again in October 2004.[5]  She had decreased strength in her right upper extremity and decreased range of motion at the waist.  She was given medication. AR 450.  After a fall out of bed in November 2004, Plaintiff again complained of right arm pain with numbness in her right hand.  She had decreased range of motion and grip strength in her right arm and was prescribed medication and physical therapy.  AR 448-449. Despite her complaints and objective findings, though, no limitations were imposed.  In fact, a treatment note in December 2004, indicated that electrical stimulation was helping with her right shoulder pain.  AR 443.  In February 2005, Plaintiff was diagnosed with right upper and lower extremity parasthesis and prescribed electrical stimulation twice a week for two weeks for her lower back.  AR 454.

So, while there is evidence that Plaintiff complained of right shoulder pain with decreased range of motion and grip strength, there is no evidence that this impairment had more than a minimal effect on her physical ability(ies) to perform basic work activities.  SSR 85-28.  In fact, there is no evidence of *any* limitations resulting from her right shoulder problems during the relevant time period.  Although Plaintiff argues that her treatment continued through February 2005, the treatment plan set out during that visit consisted of electrical stimulation for her lower back.  AR 454.  The mere diagnosis of an impairment is not sufficient to sustain a finding of

---

[4] Plaintiff's application alleges disability since January 18, 2001.  However, this Court affirmed the June 16, 2003, decision of the ALJ denying benefits in Plaintiff's prior application.  Therefore, pursuant to the principles of res judicata, the period before June 16, 2003, is final absent a finding of changed circumstances.  *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983).  *Chavez v. Bowen*, 844 F.3d 691, 693 (9th Cir. 1988).

[5] Although Plaintiff attempts to characterize her shoulder impairment in part as a new injury resulting from a fall out of bed in November 2004, she indicated in October 2004 that she had right hand numbness for the past two months.  AR 450.

—

1  disability, nor are symptoms alone enough to establish an impairment. *Key v. Heckler*, 754 F.2d

2  1545, 1549 (9th Cir. 1985); 20 C.F.R. § 404.1528.

3         Accordingly, based on the above, the ALJ's determination was supported by substantial

4  evidence and Plaintiff provides no reason for finding otherwise.  The courts do not have the

5  responsibility for weighing the evidence and resolving conflicts therein, that responsibility

6  belongs to the Commissioner alone. *Richardson v.  Perales*, 402 U.S. 389, 399 (1971). The

7  Court must uphold the ALJ's decision were, the evidence is susceptible to more than one rational

8  interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

9  B.     Plaintiff's Obesity

10        Plaintiff next argues that the ALJ failed to properly assess the effects of her obesity on her

11 ability to work.  Plaintiff cites SSR 02-01p in support of her argument and contends that the

12 ALJ's two-sentence discussion of her obesity is inadequate under SSR 02-01p.

13        Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation

14 process, including when determining an individual's RFC.  "The combined effects of obesity

15 with other impairments may be greater than might be expected without obesity."  SSR 02-1p.

16 The Ninth Circuit recently held that, pursuant to SSR 02-1p, the ALJ must consider obesity in

17 determining RFC based on the information in the case record. *Burch v. Barnhart*, 400 F.3d 676,

18 683 (9th Cir. 2005).

19        In *Burch*, the ALJ did not find that the claimant's obesity, in combination with her other

20 impairments, met a Listing. *Burch*, 400 F.3d at 682-683.  The court held that this was not

21 reversible error, as it is the claimant's burden to prove that she has an impairment that meets or

22 equals the criteria of an impairment in the Listings. *Id.* at 683.  An "ALJ is not required to

23 discuss the combined effects of a claimant's impairments or compare them to any listing in an

24 equivalency determination, unless the claimant presents evidence in an effort to establish

25 equivalence." *Id.*

26        In his decision, after reviewing the medical record, the ALJ noted the consultive

27 examiner's finding that Plaintiff was obese at 65.5 inches and 252 pounds.  AR 307.  Citing SSR

28 02-01p, the ALJ determined that her obesity was not a severe impairment because "no doctor

1   actually indicated that any functional limitations result from [her] obesity." AR 307.  Although

2   Plaintiff faults the ALJ for failing to further limit her because of her obesity, *Burch* does not

3   compel further limitations.  The Ninth Circuit, citing the district court's findings, noted:

> There was no evidence before the ALJ, and none in the record, which states that
> claimant's obesity limits her functioning.  Neither treatment notes nor any diagnoses
> addressed claimant's limitations due to obesity.  The medical record is silent as to whether
> and how claimant's obesity might have exacerbated her condition.  Moreover, claimant
> did not present any testimony or other evidence at her hearing that her obesity impaired
> her ability to work.

*Id.* at 683.  The court continued,

> Even on appeal, Burch has not pointed to any evidence of functional limitations due to
> obesity which would have impacted the ALJ's analysis.  In fact, the only evidence in the
> record relating to her obesity are notes from doctors who observed weight gain, indicated
> that Burch is obese, and recommended that she participate in a medically supervised
> weight loss program.  We therefore conclude that the ALJ did not commit reversible error
> by failing to consider Burch's obesity in determining whether she met or equaled the
> requirements of a listed impairment.

*Id.*

13      The case at hand is not unlike *Burch.*  As the ALJ here correctly noted, no doctor imposed

14   any functional limitations on Plaintiff because of her obesity.  Although the record contains

15   evidence of Plaintiff's obesity, there is no evidence that her obesity resulted in more drastic

16   limitations than those imposed by the ALJ.  *Burch*, 400 F.3d at 683.  In fact, there is only one

17   notation in the record concerning Plaintiff's obesity.  Dr. Ostrem indicated that straight leg

18   raising was not performed because of Plaintiff's severe obesity.  AR 426.  However, despite her

19   obesity, range of motion in her upper and lower extremities was within normal limits and there

20   was no evidence of joint pain, swelling, tenderness or inflammation.  Grip strength was 5/5

21   bilaterally, and motor strength and sensation were normal.  AR 425-428.  Aware of her obesity,

22   Dr. Ostrem found that Plaintiff could perform work at the light level with postural limitations.

23   AR 429.

24      To the extent that Plaintiff equates her inability to perform straight leg raising during her

25   evaluation by Dr. Ostrem with a significant limitation, her argument fails.  Plaintiff's size

26   prevented the performance of the test, but her inability to perform the test does not provide any

27   insight as to her limitations *had she been able to perform the test*.  Plaintiff argues that her

1  obesity was "clearly" a severe impairment because she was unable to perform the test, but this

2  does not necessarily equate to an inability to perform a work related function.

3          On the record before the ALJ, there was simply little to no evidence relating to Plaintiff's

4  obesity and/or any resulting functional, work-related limitation.  Plaintiff's argument is without

5  merit and must be denied.

6                                              **CONCLUSION**

7          Based on the foregoing, the Court finds that the ALJ's decision is supported by

8  substantial evidence in the record as a whole and is based on proper legal standards.

9  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

10  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

11  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

12  Sarah Wilson-Banks.

13

14          IT IS SO ORDERED.

15      **Dated:    June 19, 2007**              _____ **/s/ Dennis L. Beck** _____
                                                    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28